IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELIZABETH GARCIA,
                    Plaintiff,

            vs.                                                    No. 13-CV-0693-MV-LAM

CROSSMARK, INC.,
                    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Crossmark, Inc.'s ("Crossmark")

Motion for Partial Summary Judgment [Doc. 81] and Crossmark's Motion *in Limine* [Doc. 83].

The Court, having considered the Motions, briefs, relevant law, and being otherwise fully

informed, finds that both the Motion for Partial Summary Judgment and Motion *in Limine* are

well-taken in part and therefore will be **GRANTED IN PART.**

## BACKGROUND

This case was born in Philadelphia more than three years ago as part of a putative Fair

Labor Standards Act ("FLSA") collective action under the caption *Postiglione, et al. v.*

*Crossmark, Inc. See, e.g.*, Doc. 82 at 1. Garcia, the individual plaintiff in the instant civil action,

was dismissed from that suit because her allegations were not grounded in the same transaction

or occurrence as the main case. *Id.* at 2. Garcia, along with forty-seven other *Postiglione*

plaintiffs who had been denied class certification then filed individual suits, each in the Eastern

District of Pennsylvania, irrespective of where the individual plaintiff worked or resided; the

action at bar was transferred to this district. *See generally* Doc. 13. Since then, this case has

produced a welter of profoundly contentious motions, including this Motion for Partial Summary

1

Judgment and Motion *in Limine*, which now carry with them hundreds of pages of attached exhibits.

Broadly stated, Crossmark enumerates six issues on which it believes it is entitled to judgment as a matter of law.  First, it contends that Plaintiff "cannot recover for the time she spent driving between her home and" work "because ordinary commuting time is not compensable under the FLSA" and the New Mexico Minimum Wage Act ("NMMWA").  Doc. 82 at 5.  Second, Defendant urges that Plaintiff may not maintain her claim for underpayment to the extent that it includes "between-store drive time" as this category of purportedly unpaid time was not included in her Complaint.  *Id.* at 7-8.  Third, Crossmark argues that Garcia's claims are at least partially time-barred.  *Id.* at 8.  Fourth, Crossmark requests summary judgment as to the FLSA claims arising out of those weeks in which Plaintiff indisputably worked fewer than 40 hours.  Fifth, Crossmark seeks to clarify that, if successful, Plaintiff may only recover liquidated damages under the FLSA for unpaid overtime wages, not ordinary wages.  *Id.* at 11.  Sixth, and finally, Defendant maintains that, because Plaintiff has not alleged any minimum wage violation, she is not entitled, as a matter of law, to treble damages under the NMMWA.  Because Plaintiff agrees with Defendant on certain issues and because many of the questions on which Defendant requests summary judgment are resolved purely by reference to the applicable law, the Court will reserve its discussion of the applicable factual background to each issue, rather than endeavoring to provide an overview of the entire suit.

## SUMMARY JUDGMENT

The standard on an ordinary motion for summary judgment is, by now, easily recited: "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Lenox MacLaren*

*Surgical Group v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). For these purposes, an issue "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and a fact is material if under the substantive law it is essential to the proper disposition of the claim." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation marks omitted). Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). In evaluating the Motion, this Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).

This standard is no different where, as here, the movant seeks summary judgment only as to some of the issues in dispute. *See, e.g.*, *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1303 (D. Colo. 2011) ("A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment."); *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) ("A motion for partial summary judgment utilizes the same standards required for consideration of a full motion for summary judgment."). That is, where the sole question with respect to a given issue is whether the facts adduced entitle the movant to judgment as a matter of law, this Court may narrow the scope of litigation by granting summary judgment.

**DISCUSSION**

**I.    Compensability of Commuting Time Under the Fair Labor Standards Act and the New Mexico Minimum Wage Act**

Defendant Crossmark argues that Garcia's commuting time is not compensable under the FLSA and, in the absence of authority to the contrary, is also not compensable under the

NMMWA, whose interpretation mirrors its federal counterpart. *Id.* at 5. Plaintiff disagrees, arguing that that her commute qualifies as working time under the Act both because her drive to and from a given retail location formed part of her "continuous work day" and because she was required to transport equipment during her commute. Doc. 101 at 6-7. The parties do not appear to dispute any of the facts material to this question; the only remaining issue is what the law demands on these facts.

Garcia worked for Crossmark as a "Retail Representative," which entailed, in relevant part, "receiv[ing] job assignments from Defendant on her home computer," loading "materials sent to her by Defendant" into her car, and then visiting client retail establishments to execute Defendant's plan for in-store displays, after which she was required to log her time in Defendant's system. Doc. 91 ¶¶ 14-23. Importantly, Crossmark does not dispute that any time Garcia devoted to administrative tasks such as downloading and printing the day's diagrams or putting materials into her car qualifies as working time; rather, Defendant argues that only the driving time itself is excluded from the FLSA under the Portal-to-Portal Act. Doc. 110 at 4. Similarly, there is no dispute that the conditions of her employment permitted Garcia to structure her mornings according to her own designs; while Garcia urges that she did not, in fact, "stop for breakfast or a cup of coffee" en route to her first assignment of the day, even she must concede that she was *permitted* to do so. *See, e.g.*, Doc. 100 at 9-10; Doc. 81-9 at 5-6. That is, despite her studied responses regarding the consistency of her schedule, nothing in the terms of her employment *required* that she perform her administrative tasks *immediately* prior to beginning her workday. She could have, for example, elected to prepare her materials, then exercise, eat breakfast, watch television, or engage in any number of personal activities prior to beginning her commute; that she is "a creature of early morning hours" and found a certain routine to conform

4

most comfortably with her predilections does not alter the fact that she was free to do otherwise. Doc. 100-2 at 12.  In fact, given that she could access her employer's online portal from virtually anywhere, Plaintiff could have begun her day from nearly wherever she chose, so long as she timely arrived at her first appointment of the day.  *Id.* at 11-12.  *See also* Doc. 100 ¶¶ 13-14.

On these undisputed facts, the law forecloses relief under the FLSA.  First, because nothing *required* that Garcia complete the administrative tasks that she performed *immediately* before or after her commute, the interceding travel time cannot qualify as working time under the "continuous workday" rule.  *See Kuebel v. Black & Decker*, 643 F.3d 352, 360-61 (2d Cir. 2011) (explaining that because the "record indicates only that it might have been necessary to perform certain activities in the morning, or in the evening" rather than that Plaintiff "was required to perform them immediately before leaving home, or immediately after returning home," commuting time was not compensable under the FLSA).  *See also Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 917 (D. Minn. 2010) ("In short, because investigators are not required to perform these activities at any specific time means that [they] may use the intervening time for [their] own purposes, and accordingly pursuant to 29 C.F.R. § 785.16, [Veracity] need not compensate [them] for the intervening [travel] time.") (modifications original) (internal quotation marks omitted).

This conclusion follows inexorably from a reading of 29 C.F.R. § 785.16 in conjunction with § 790.6.  Section 785.16 provides that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."  29 C.F.R. § 785.16(a).  This section, then, describes at least one set of circumstances in which the "continuous workday" described in § 790.6, is interrupted and the intervening time need not be compensated.  Here, while Garcia undoubtedly

performs some preparatory and administrative work at home, because she is able to perform

these tasks from any number of locations and is free to schedule her time so as to "use the time

effectively for [her] own purposes," she is, in effect, fully relieved of duty before she arrives at

her first location and after she departs the last.  *See Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046,

1060 (9th Cir. 2010) (explaining that where a technician may perform an administrative task

during a twelve hour window, "from the moment [that] technician completes his last installation

of the day, he 'is completely relieved from duty.' His only restriction is that sometime during the

night he must complete" his administrative duties).  Consequently, the "continuous workday"

rule does not apply to Garcia's employment.

Put differently, Garcia's argument proves too much; taken to its logical conclusion,

Plaintiff's articulation of the law would demand that had she elected to prepare her materials

every morning at four, rather than six, and then return to sleep before leaving for the day, she

would be entitled to compensation for the time she spent unconscious.  *See, e.g.*, *Kuebel*, 643

F.3d at 360 ("The fact that [Plaintiff] performs some administrative tasks at home, on his own

schedule, does not make his commute time compensable any more than it makes his sleep time

or his dinner time compensable.").  It simply cannot be the case that an employee is empowered

unilaterally to convert her commute into compensable time merely by deciding to perform her

daily routine in a particular manner.

Second, the mere fact that Plaintiff often carried with her some of the materials necessary

for the day's work during her commute does not push her driving time outside of the ambit of the

exclusion contained in the Portal-to-Portal Act.  Ordinarily, time spent commuting to work is not

compensable, "even if the employee is also transporting equipment for the employer's benefit."

*Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234, 246 (D. Mass. 2004) (collecting cases).

6

Given Congress's manifest intent to exclude ordinary commutes from the definition of working time, this Court will only reach a contrary result where, for example, an employee is required to carry "heavy equipment" such as that described in 29 C.F.R. § 790.7(d) to and from her place of employment. *Dooley* at 247 ("Although transporting heavy equipment might constitute work, any effort involved in transporting light equipment is likely to be treated as de minimus."). *See also* 29 C.F.R. § 790.7(d) ("An illustration of such travel would be the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area.").

The facts at bar plainly do not square with the contours of this exception. As an initial matter, and as mentioned above, there is no dispute that the time Garcia spent loading her vehicle is compensable; rather, the question is whether the time spent *in transit* is encompassed by the Portal-to-Portal Act. Framed this way, it is plain that driving with promotional materials in a car is not equivalent to carrying a heavy chainsaw through the woods. This reading comports with the understanding articulated in other cases that modest employer restrictions on a commute do not transform the drive into working time. *See Easter v. United States*, 575 F.3d 1332, 1333 (Fed. Cir. 2009) (federal employees' commute held non-compensable despite "the requirements that (1) they use government vehicles for commuting, (2) they refrain from using the vehicles for personal purposes, and (3) they transport work-related equipment with them when they use the vehicles for commuting").

The Tenth Circuit's decision in *Smith v. Aztec Well Servicing Co.* is not to the contrary. There, the court reasoned that that although "plaintiffs occasionally carried equipment and paperwork on behalf of the tool pusher, this was a relatively rare occurrence, and the crews did it as a favor to the tool pusher rather than as an ordinary part of their job." *Smith v. Aztec Well*

*Servicing Co.*, 462 F.3d 1274, 1290 (10th Cir. 2006).  Therefore, the court concluded, "Plaintiffs failed to establish that the travel time in and of itself was work for which they must be compensated." *Id.*  The Court will not stretch this brief aside to find that transporting relatively modest items, such as a promotional blender or boxes full of brochures, constitutes "a significant amount of work." *Aiken v. City of Memphis, Tennessee*, 190 F.3d 753, 759 n.4 (6th Cir. 1999). *See also Singh v. City of New York*, 524 F.3d 361, 369-70 (2d Cir. 2008) ("In the sixty years following the Portal-to-Portal Act, we are unaware of any court that has required employers to pay employees for otherwise non-compensable commuting time simply because employees must travel with a briefcase or a small toolbox or a handheld device in order to be prepared for the workday.").  Thus, the Court finds that, based on the uncontested facts, Plaintiff's commute does not constitute working time and summary judgment on this issue will be granted in favor of Crossmark.

## II.    Underpayment of Intraday Driving

Crossmark argues that because "Plaintiff's Complaint contains no allegations regarding underpayment for between-store drive time" she should be limited to recovery on the four categories of underpayment she described in her Second Amended Complaint.  *See* Doc. 82 at 7-8.  However, in the Pretrial Order, Garcia alleges that she was not paid for "twenty (20) minutes per day driving between stores."  Doc. 117 at 4.  Hence, this case differs from *Aztec*, where the district court *excluded* the relevant claims from the pretrial order.  *Aztec*, 463 F.3d at 1284.  Here, the claim at issue is contained in the Court's Pretrial Order, which superseded Plaintiff's Second Amended Complaint.  *See Hernandez v. Alexander*, 671 F.2d 402, 407 (10th Cir. 1982) ("the pre-trial order supersedes the pleadings and becomes the governing pattern of the suit.").  *See also Syrie v. Knoll Intern.*, 748 F.2d 304, 308 (5th Cir. 1984) ("incorporation of a negligence

8

claim into the pre-trial order … amends the previous pleadings to state a negligence claim.").

Defendant may have preferred to exclude this allegation from the Pretrial Order, but does not

argue that the Court wrongfully included it, nor that the Complaint should take precedence over

the Pretrial Order.  Therefore, summary judgment preventing Plaintiff from recovering on this

allegation will be denied.

### III.    Statutes of Limitations

The parties agree both on the applicable statutes of limitations and on the relevant dates

of accrual.  *See* Doc. 82 at 8-9; Doc. 101 at 9.  As the parties note, the statute of limitations was

tolled beginning on May 2, 2011, the date on which Garcia joined the *Postiglione* suit in the

Eastern District of Pennsylvania. However, as a result of this Court's Memorandum Opinion and

Order denying Plaintiff's motion for equitable tolling [Doc. 39], approximately two additional

months lapsed due to her failure promptly to file this action.  *See* 7B Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1807 (3d ed.) ("Like

class suits, however, the statute of limitations for opt-in plaintiffs [in FLSA collective actions]

will begin to run again if the court later decertifies the collective action."); *Giovanniello v. ALM

Media, LLC*, 726 F.3d 106, 116 (2d Cir. 2013) ("We now take this opportunity to join our sister

circuits and hold that American Pipe tolling does not extend beyond the denial of class status.").

Consequently, Plaintiff's action will be deemed to have been commenced on July 12,

2011.  Taken in conjunction with the FLSA's two and three years limitations periods, this means

that Plaintiff may now only recover under the FLSA for claims accruing on or after July 12, 2008

for willful violations and July 12, 2009 for non-willful violations.  *See* 29 U.S.C. § 255(a)

("every such action shall be forever barred unless commenced within two years after the cause of

action accrued, except that a cause of action arising out of a willful violation may be commenced

within three years after the cause of action accrued").  Although the *Postiglione* collective action

did not mention the New Mexico Minimum Wage Act, the Court finds that this claim relates

back to the date on which she joined the predecessor suit.  *Cf.* Fed. R. Civ. P. 15(c) ("An

amendment to a pleading relates back to the date of the original pleading when… a claim or

defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set

out--in the original pleading.").  Even so, because the expansion of the applicable New Mexico

limitations period did not have retroactive effect, Plaintiff's NMMWA claims may only extend

as far back as June 19, 2009, the effective date of the amendment.  *See generally* N.M.S.A. § 37-

1-5; *Arnold v. Schlumberger Tech. Corp.*, No. 10cv346 MCA/LAM, 2010 WL 9007208 (Oct. 29,

2010).  Thus, because there is no dispute about any material facts and Defendant is entitled to

judgment as a matter of law, the Court will grant summary judgment on this issue.


**IV.    Non-overtime Weeks Under the Fair Labor Standards Act**

Plaintiff agrees with Defendant that she cannot recover under the FLSA "for unpaid

wages for weeks in which she worked less than forty (40) hours."  The sole disagreement

between the litigants in this area centers on the amount of "unreported hours" listed in

Defendant's Exhibit D; Plaintiff argues that intraday driving time should be included in this

estimate, but otherwise adopts Defendant's calculations.  *See* Doc. 101 at 10-11, Doc. 81-5, Doc.

110 at 8-9.   Incorporating its decision regarding intraday driving time, the Court finds that

Plaintiff's claims for work weeks in which she worked fewer than 40 hours, assuming her

estimate of an additional 5.25 unreported hours worked on applicable days, do not present

cognizable claims under the FLSA.  *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711

F.3d 106, 115 (2d Cir. 2013) ("An employee who has not worked overtime has no claim under

FLSA for hours worked below the 40–hour overtime threshold, unless the average hourly wage

falls below the federal minimum wage."). *See Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1280 (10th Cir. 1996) ("there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer.").  Thus, the Court will grant summary judgment for the Defendant as to each week in which the parties do not dispute that Plaintiff worked fewer than 40 hours.

## V.    Liquidated Damages Under the Fair Labor Standards Act

The parties agree that Plaintiff is entitled to liquidated damages only to the extent of "the amount of unpaid overtime wages."  Doc. 101 at 11.  *See also* Doc. 110 at 9.  This proposition comports with a plain reading of the FLSA.  *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").  As this is an uncontroversial and undisputed question of law, the Court will grant summary judgment in Crossmark's favor on this question.

## VI.   Treble Damages Under the New Mexico Minimum Wage Act

The parties dispute whether the treble damages clause in N.M.S.A. 1978, § 50-4-26(C) applies both to violations of the minimum wage and overtime provisions, or solely to minimum wage violations.  This is a matter of statutory interpretation and therefore is a purely legal issue on which the parties are entitled to judgment as a matter of law.  The relevant portion of the statute provides that, "[i]n addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an

11

additional amount equal to twice the unpaid or underpaid wages." Research has not revealed any

pertinent interpretation of this section of the NMMWA; the Court will thus repair to

interpretations of comparable portions of the FLSA to aid in its construction of the ambiguous

statutory text. *See, e.g.*, *Bishop v. Good Samaritan Soc'y*, 212 P.3d 361, 364-65 (N.M. 2009)

("when presented with a question of statutory construction, we begin our analysis by examining

the language utilized by the Legislature, as the text of the statute is the primary indicator of

legislative intent" but courts must avoid interpretations that "would be absurd, unreasonable, or

otherwise inappropriate in application"); *Schlumberger*, 2010 WL 9007208 at *4 (New Mexico

courts often refer to analogous sections of the FLSA where the NMMWA is ambiguous); *Armijo

v. Wal-Mart Stores, Inc.*, 168 P.3d 129, 144 (N.M. Ct. App. 2007) (looking to a "similar

provision" in the FLSA where the New Mexico "Act does not define the term" and "and there is

no appellate decision in New Mexico" resolving the question).

The source of the difficulty in interpreting this statutory provision is two-fold: first, the

liquidated damages clause unhelpfully refers initially to "unpaid or underpaid *minimum* wages"

and then "unpaid or underpaid wages" without any indication as to the relationship between the

two phrases, and, second, although the clause refers specifically to "minimum wages" it cross-

references a separate section, which establishes both minimum wage and overtime regulations.

Although the statute is not the model of clarity, the Court finds that the ordinary reading of the

text demonstrates that the section provides for treble damages *solely* in the case of minimum

wage violations. First, the Court finds that the phrase "shall be liable to the employees affected

in the amount of their unpaid or underpaid minimum wages plus interest" defines the later term

"unpaid or underpaid wages," which, in turn, describes the relationship of this section to § 50-4-

22. *See United States v. Brune*, 767 F.3d 1009, 1022-23 (10th Cir. 2014) (courts "are required to

construe a phrase within a statute with reference to its accompanying words "in order to avoid the giving of unintended breadth" to the statute).  Second, the canon of *expressio unius est exclusio alterius* counsels that because the New Mexico legislature included "minimum wages" in the statute, but not overtime, it intended to exclude overtime from the reach of the law.  *Elwell v. Oklahoma ex rel. Bd. Of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1312 (10th Cir. 2012) ("[c]ommon sense, reflected in the canon *expressio unius est exclusio alterius*, suggests that the specification of [one provision] implies the exclusion of others") (modification original) (internal quotation marks omitted).  That is, because minimum wage and overtime "go hand in hand" as items generally discussed together, the drafting of this statute raises the "sensible inference that the term left out must have been meant to be excluded."  *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (internal quotation marks omitted).

Reference to the FLSA reinforces this conclusion; the FLSA, in its liquidated damages provision, specifies that damages are to be measured "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Given that New Mexico had the benefit of referring to federal law when it drafted the section in question, had it intended to reach an analogous result, it could have simply imported the relevant language.

## CROSSMARK'S MOTION *IN LIMINE*

Crossmark, in its Motion *in Limine*, requests the exclusion from trial of four broad categories of evidence:  (1) "reference to any other lawsuits or complaints by other current or former" employees and reference to Garcia's involvement in the predecessor suit; (2) testimony "from current or former employees or supervisors" without personal knowledge of Garcia's employment at Crossmark, including four specific individuals; (3) argument regarding the

13

electronic records maintained by Crossmark's systems; and (4) any argument that Crossmark had

any legal duty to keep records of the time Garcia spent logged in to Crossmark's electronic

portal.  *See generally* Doc. 83.  The Court will address each of these issues in turn.

I.   **Other Lawsuits or Complaints by Crossmark Employees**

The question here is whether, in her effort to demonstrate a willful violation of the FLSA,

Garcia should be permitted to refer to "other lawsuits or complaints by other current or former"

employees, including the *Postiglione* suit.  *Id* at 2.  In this regard, it appears that the parties'

briefs speak somewhat past one another; Crossmark focuses on the potential use of such

testimony to make out a substantive violation of the FLSA, while Garcia limits the proposed

scope to the issue of willfulness.  *Compare* Doc. 84 at 3-4 *and* Doc. 113 at 3-5 *with* Doc. 106 at

2-3.  The Court views this evidence as eminently relevant.  Given that Crossmark disputes that

the longer, three-year statute of limitations applies, Garcia is entitled to show that her employer

was aware of potential FLSA violations and therefore acted knowingly or recklessly.  *See*

*generally* 29 U.S.C. § 255; *Mumby v. Pure Energy Servs.*, 636 F.3d 1266 (10th Cir. 2011).

Introducing evidence that Crossmark had received prior complaints regarding its policy for

reporting working time is well within the range of reasonable evidence to support this inference.

Ultimately, the Court will reserve final judgment on this evidence until trial.  *See*

*Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008)

(noting that "in many cases, evidentiary rulings should be deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in the proper context").  *See also*

*Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1180 (D. Kan. 1997) (explaining that "[i]n

its discretion, the court may decline deciding a motion in limine which would have little impact

on the parties' evidentiary burdens or preparation for trial").  However, presuming that Plaintiff

can lay a sufficient foundation, the Court believes that narrow testimony regarding prior

complaints and lawsuits is appropriate to demonstrate that Crossmark acted willfully.

## II.      Testimony From Employees Without Personal Knowledge

Discussion of this request is inextricably linked to the evidence discussed above.

Consequently, the Court comes to the same conclusion.  Assuming that Plaintiff can lay a

foundation that sufficiently demonstrates a connection between the personal knowledge of her

proposed witnesses and a showing that Crossmark knew or should have known that there were

issues with the manner in which *Garcia's* working time was calculated, the Court will permit

such evidence at trial.  For now, however, the Court will decline to decide this issue and will

resolve it at the same time as the dispute surrounding the evidence in the first category.

## III.     Records of Activity in the Online Portal

Defendant moves that the Court prohibit "argument or testimony about any electronic

records" of when she logged into or out of the employee website.  Doc. 83 at 2.  Plaintiff

responds that she "does not intend to introduce such testimony" and instead, will offer the Daily

Activity Reports, which show, according to her, "data entry times" rather than log-on or log-off

times.  Doc. 106 at 6.  Given that Crossmark does not object to the introduction of these logs, the

Court will treat this request as moot.  *See* Doc. 113 at 7 n.7.  Should the parties' positions

change, they are free to raise this issue at trial.  The remainder of the issues discussed under this

heading in the parties' briefs are properly subsumed in Crossmark's fourth category and

therefore will be discussed below.

**IV.    Legal Duty to Record Time on the Online Portal**

Plaintiff concedes that she is "not aware of a legal duty to create records of the times an employee logs on or off a website" and that, therefore, "she does not intend to argue that such a legal duty exists."  Doc. 106 at 7.  The Court will hold Garcia to this.  The existence of a duty under the FLSA is a legal proposition about which the Court, not the parties, is charged with instructing the jury.  *Cf. Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (emphasizing that the Court, rather than an expert witness, is the sole "spokesman of the law" in every case).

With respect to the issue of the "deliberate design" of the online platform, it appears that Garcia argues that she may, without any basis in fact, speculate as to the motivations of whoever built the computer system.  *See* Doc. 106 at 7.  The Court is not convinced.  Garcia has not articulated why the motivation for the design of the system is relevant to any element of the claims in dispute before this Court.  Rather, it appears that this avenue of argument is directed solely at inducing a jury to impose liability on Crossmark for reasons outside of the substantive law.  The Court will not permit the litigants before it to traffic in such naked attempts to manipulate the jury.  While the Court will reserve its ruling on this matter until trial, at present, the Court can see no reason to deny Crossmark's request.

## CONCLUSION

This case has proven extremely contentious, but the Court hopes that its opinion will give clarity to the parties and narrow the issues for trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. 81] is **GRANTED IN PART** and that Defendant's Motion *in Limine* [Doc. 83] is **GRANTED IN PART.**

Dated this 26th day of March, 2015.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE